**E-FILED**
Wednesday, 26 January, 2005  12:29:05 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

FILED

JAN 2 5 2005

JOHN M. WATERS, CLERK
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Glenn Rinkel, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05 – 1022 |
| | ) | |
| Caterpillar, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES Plaintiff, Glenn Rinkel, by and through his attorneys, The Leiter Group, and for his Complaint against Defendant, Caterpillar, Inc., a Delaware corporation, states as follows:

### NATURE OF ACTION

1.      This is a Civil Enforcement Action brought pursuant to Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1132.

2.      The lawsuit concerns the Caterpillar Retirement Plan ("Plan," attached hereto as Exhibit A) established by Caterpillar, Inc. ("CAT" or the "Company") as a benefit for its employees to permit savings for retirement and other long-term goals. The Plaintiff, Glen Rinkel, is a former employee of CAT and a participant of the Plan. Plaintiff alleges that Defendant violated the ERISA, Section 502, 29 U.S.C. Section 1132 (a)(1)(B) and 29 U.S.C. Section 1132 (a)(3)(B), in connection with the Plaintiff's transfer of Caterpillar stock.

### FACTS

3.      Plaintiff began his career with Defendant in 1963 and retired January 1, 2002 from Defendant's corporation.

4.      In November, 2001, Plaintiff requested Defendant to transfer 7,564 shares of Caterpillar stock from his retirement account to an insurance company (as a roll-over).

5.      Stock certificates were issued on February 8, 2002 with a value of $48.50 per share.

6.      During the transfer process, the original stock certificates were lost in transit to the insurance company. Furthermore, the parties involved were notified by the insurance company that the insurance did not accept stock certificates. The insurance company required the certificates to be

liquidated to cash.

7.      The 7,564 shares were returned to Plaintiff's retirement account on May 7, 2002. On May 7, 2002, the shares were valued at $54.00/ share.

8.      In May the shares of Caterpillar stock were liquidated and the funds were sent to the insurance company. The check was issued in the amount of $366,854.00. This check valued the shares at $48.50.

9.      In May, when the Caterpillar stock was liquidated and the funds were sent to the insurance company, the stock was valued at $54.00/ share.

## JURISDICTION AND VENUE

10.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331 (Federal questions) and ERISA Section 502 (e), 29 U.S.C. Section 1132 (e) and personal jurisdiction over the Defendants pursuant to Federal Rules of Civil Procedure (4)(k).

11.     Venue is proper in this district pursuant to ERISA Section 502 (e), 29 U.S.C. Section 1132 (e), Defendant maintains its corporate headquarters in this district.

## PARTIES

12.     Plaintiff is a resident of Washington. He is a former employee of CAT.

13.     Plaintiff is a participant in the Plan within the meaning of ERISA Section 3(7), 29 U.S.C. Section 1002(7).

14.     Defendant is a Delaware corporation with its principal place of business located at 100 N.E. Adams Street, Peoria, Illinois 61629. The Defendant is a Fortune 100 Company and is one of the leading manufacturer of construction and mining equipment, diesel and natural gas engines and industrial gas turbines.

## THE PLAN

15.     By information and belief, the Plan is an employee pension benefit plan within the meaning of ERISA Section 3(2)(A), 29 U.S.C. Section 1002(2)(A). Further, it is an eligible individual account plan within the meaning of ERISA Section 407(d)(3), 29 U.S.C. Section 1107(d)(3). The Plan is not a party to this action pursuant to ERISA.

16.     CAT is the sponsored administrator of the Plan.

## COUNT I

## CLAIM FOR BENEFITS DUE UNDER 29 U.S.C. SECTION 1132 (a)(1)(B)

17.     Plaintiff realleges and incorporates the allegations contained in Paragraphs 1-16 inclusive.

2

18. Pursuant to the terms of the CAT Plan that has been and continues to be in effect, Plaintiff is entitled to the amount of $41,602.00. This number is the difference between 7,564 shares valued at $48.50 per share (the value when the issuance was first requested) and 7,564 shares valued at $54.00 per share (the value when the shares were actually issued).

19. Plaintiff has made demands upon Defendant for payment of his full benefits under the Plan.

20. Defendant has refused to respond to Plaintiff's request for payments of the benefits due under the Plan. The Plaintiff has exhausted all of his administrative remedies.

Plaintiff is therefore entitled to release from Defendant in the form of:

 1.  a monetary payment in the amount of $41,602.00;

 2.  reasonable attorney's fees and expenses as provided by ERISA Section 502(g), 29 U.S.C. Section 1132(g) and other applicable law;

 3.  taxable costs; and

 4.  interest on some or all of the amounts as provided by law.

## COUNT II

## CLAIM FOR BENEFITS DUE UNDER 29 U.S.C. SECTION 1132 (a)(3)(B)

21. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1-16 Inclusive.

22. Pursuant to the terms of the CAT Plan that has been and continues to be in effect, Plaintiff is entitled to the amount of $41,602.00. This number is the difference between 7,564 shares valued at $48.50 per share (the value when the issuance was first requested) and 7,564 shares valued at $54.00 per share (the value when the shares were actually issued).

23. Plaintiff has made demands upon Defendant for payment of his full benefits under the Plan.

24. Defendant has refused to respond to Plaintiff's request for payments of the benefits due under the Plan. The Plaintiff has exhausted all of his administrative remedies.

Plaintiff is therefore entitled to release from Defendant in the form of:

 1.  a monetary payment in the amount of $41,602.00;

 2.  reasonable attorney's fees and expenses as provided by ERISA Section 502(g), 29 U.S.C. Section 1132(g) and other applicable law;

 3.  taxable costs; and

 4.  interest on some or all of the amounts as provided by law.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

## **PRAYER**

IN VIEW OF ALL THIS, Plaintiff prays for judgment against Defendant for a monetary payment and all other appropriate equitable relief, the reasonable attorney's fees and expenses, taxable costs, interest, and any other relief the Court deems just.

Dated this 25th day of January, 2005.

Respectfully submitted
Glenn Rinkel

By: _____
Samuel B. Zabek

Plaintiff's Attorney:
Samuel B. Zabek
THE LEITER GROUP
309-A Main Street
Peoria, Illinois 61602
309-673-2922

4

**CATERPILLAR** ®

**Caterpillar Inc.**

100 NE Adams Street
Peoria, Illinois 61629  -7310

October 5, 2004

Kenneth E. Davies, Esq.
The Leiter Group
309-A Main Street
Peoria, IL  61602

Re:  Caterpillar Inc. Employees' Investment Plan – Part 2 (the "Plan")
Participant Glenn E. Rinkel's Claim for Benefits

Dear Mr. Davies:

Enclosed are the plan documents as they existed at the time of Mr. Rinkel's initial claim.  If you would like the current documents, please let me know.

All plan policies relied on in adjudicating Mr. Rinkel's claim were attached as exhibits to the final denial.

Very truly yours,

Senior Attorney

JDGinzel
e-mail: Ginzel_Jonathan_D@cat.com
Telephone: (309) 675-4535
Facsimile: (309) 675-6620
jma\jdg\rinkel

Enclosures

# EIP

# EMPLOYEES' INVESTMENT PLAN

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED
BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS THE
COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF
THIS PROSPECTUS. ANY REPRESENTATION TO THE CONTRARY S A
CRIMINAL OFFENSE.

The date of this Prospectus is January, 1997



PROSPECTUS

# CATERPILLAR INC.

COMMON STOCK

and Participations in the Plan

OFFERED AS SET FORTH HEREIN PURSUANT TO THE

# EMPLOYEES' INVESTMENT PLAN

FOR ELIGIBLE EMPLOYEES OF CATERPILLAR INC.

# TABLE OF CONTENTS

## SECTION 1

### HIGHLIGHTS OF THE PLAN

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . 5
Who May Join? . . . . . . . . . . . . . . . . . . . . . 5
When May I Join? . . . . . . . . . . . . . . . . . . . 6
How Much Will Be Invested? . . . . . . . . . 6
Special Limitation . . . . . . . . . . . . . . . . . . . 7
Change in Rate
  or Suspension Of Contributions. . . . . . 7
How Will the Investments Be Made? . . . 7
Types Of Investments . . . . . . . . . . . . . . . 8
Transferring Fund Balances . . . . . . . . . . 14
Telephone Voice Response. . . . . . . . . . . . 14
No Guarantee. . . . . . . . . . . . . . . . . . . . . . 15
Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Withdrawal of Assets From The Funds. . . 18
Distribution After Attaining Age 70-1/2. . 19
Trustee-To-Trustee Transfer . . . . . . . . . . 19
Rollover Contribution From A Qualified Plan  20
Federal Income Taxes . . . . . . . . . . . . . . . 20
Payment Options . . . . . . . . . . . . . . . . . . . 23
Beneficiaries . . . . . . . . . . . . . . . . . . . . . . 25
Effect On Other Employee Benefits. . . . . 26

## SECTION 2

### ADDITIONAL INFORMATION

Administration . . . . . . . . . . . . . . . . . . . . 27
Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Amendment and Termination. . . . . . . . . 28
Section 404(c) Of ERISA. . . . . . . . . . . . 28
Other Information. . . . . . . . . . . . . . . . . . 29
Information Incorporated by Reference. . 32
Further Information. . . . . . . . . . . . . . . . . 33
Experts . . . . . . . . . . . . . . . . . . . . . . . . . . 33
Annualized Rate Of Return . . . . . . . . . . 33

Caterpillar Inc. is subject to the informational requirements of the Securities Exchange Act of 1934 and in accordance therewith files reports, proxy statement and other information with the Securities and Exchange Commission ("Commission"). Such reports, proxy statements and other information may be inspected and copied (at prescribed rates) at the Public Reference Room of the Commission, 450 Fifth Street, N.W., Mail Stop 1-2, Washington, D. C. 20549, and at certain of its regional offices located at: Midwest Regional Office, Citicorp Center, 500 W. Madison St., Suite 1400, Chicago, IL 60661-2511; and the Northeast Regional Office, 7 World Trade Center, Suite 1300, New York, NY 10048. Copies of such material may be obtained by mail from the Public Reference Section of the Commission, Washington, D. C. 20549, at prescribed rates.

The Common Stock of Caterpillar Inc. is listed on the New York Stock Exchange, Chicago Stock Exchange, and Pacific Stock Exchange, and reports, proxy statements and other information concerning Caterpillar Inc. can also be inspected at each such exchange.

The section entitled "Additional Information" lists certain reports and documents which are incorporated by reference. A copy of any or all of such reports and documents will be furnished upon written or oral request without charge. Any request shall be made to the Assistant Secretary of Caterpillar Inc., 100 N.E. Adams St., Peoria, Illinois 61629 (telephone number 309-675-4619).

No person has been authorized to give any information or to make any representation, other than those contained in this Prospectus, in connection with the Plan described in the Prospectus; and, if given or made, such information or representation cannot be relied upon as having been authorized by the Company. This Prospectus does not constitute an offering in any state in which such offering may not lawfully be made.

# SECTION 1

# HIGHLIGHTS OF THE PLAN

## INTRODUCTION

Part 2 of the Employees' Investment Plan allows you to have a portion of your salary deducted and paid to the Plan Trustee to be invested in a variety of investment options. You may contribute, on a voluntary basis and you may discontinue your contributions at any time. Contributions will be turned over to a bank, as trustee, to be invested for your account. Part 2 is a salary reduction plan, is qualified under Sections 401(a) and 401(k) of the Internal Revenue Code, and receives special tax treatment.

The issuer, Caterpillar Inc. (sometimes referred to herein as the "Company"), has its principal executive office at 100 N.E. Adams Street, Peoria, Illinois 61629, and its telephone number s (309) 675-1000.

## WHO MAY JOIN?

You are eligible to participate in the Plan if you meet all of these requirements:

(1) You are a regular, part-time or temporary employee of Caterpillar Inc.;

(2) You are either a citizen or resident of the United States or Canada;

(3) You have attained age 21;

(4) You are a member of a group of employees to which the Plan has been or is, and continues to be, extended by action of an employer or by any applicable collective bargaining agreement. (Each employee who is a member of such a group has been or will be promptly notified thereof); and

(5) If you are a part-time or temporary employee you must have an equivalency of at least one year of Company service.

Note: Part-time and temporary employees are eligible beginning January 1 of the calendar year following the first calendar year that commences after December 31, 1994 in which the employee works 1,000 or more hours.

## WHEN MAY I JOIN?

You may participate in the Plan as of the first day of any month after you first become eligible, if you fill out the proper enrollment form in advance. If you do not enroll when first eligible, you may do so at any later date and your election will be effective the next pay period following receipt of your enrollment form, if you are then eligible.

## HOW MUCH WILL BE INVESTED?

### Your Contributions

You cannot contribute more than the maximum allowed by law for 401(k) plans ($9,500 in 1996, adjusted from time to time by the IRS). Because of the Special Limitation discussed below, the actual amount that you may contribute could be less than the IRS maximum. The minimum deduction is $40 per month. If you choose to have the maximum amount deducted, you can have that amount divided evenly over the remaining payroll periods of the year, deducted as soon as possible in the year, or indicate a specific deduction until the maximum amount is deducted. In any event, the amount deducted each pay period cannot exceed 80% of your earnings.

If you do not choose to have the maximum amount deducted, you may indicate a specific deduction amount on your enrollment form. If you should request a deduction on the enrollment form that is lower than the minimum, your enrollment form will be returned to you. Deductions may not be made when you fail to meet all of the eligibility requirements described above.

The Company makes no contributions to the Plan.

## SPECIAL LIMITATION

The Internal Revenue Code limits the amount that may be contributed by highly compensated employees in the bargaining units when their average percentage of contributions as a group exceeds the average of all other eligible employees in the bargaining units by more than specified limits. Generally, highly compensated employees are those eligible employees whose annual earnings are higher than $66,000 (adjusted from time to time by the IRS). If excessive salary amounts are deferred, the deferred amounts of some highly compensated employees would have to be reduced. Also, the Investment Plan Committee or its delegate may, in any given plan year, adjust the regular formula to allow greater contributions by employees. In either case, affected employees will be notified.

The law also limits the amount of benefits that can be credited to your account to the lesser of $30,000 or 25% of taxable compensation for each Plan year. For Plan purposes, the law also limits "compensation" to $150,000 (adjusted from time to time by the IRS). Affected employees will be notified.

## CHANGE IN RATE OR SUSPENSION OF CONTRIBUTIONS

If you enroll and later wish to change or suspend the amount you are having deducted, you may change or suspend your deduction amount to be effective the next payroll period following receipt of the election by the Company.

## HOW WILL THE INVESTMENTS BE MADE?

Your contributions will be sent each month to a bank, as trustee, for investment. A separate account will be established for you and you will be fully vested in all of the assets credited to your account.

You have the ability to transfer funds in your account between investment options on any day that the financial markets are open by utilizing one of two methods: a toll-free telephone service described in the section TELEPHONE VOICE RESPONSE, or by written notice on a form provided by the Company. Whichever method you use must be transacted or processed before the stock market closes (3:00 p.m. Central time is the normal closing

time) for an election to be effective that day. If the stock market should close before the normal closing time, transactions may not be effective at the closing price for that day, but would be effective as of the close of the next business day. You are not restricted as to the number of transfers allowed. This flexibility is not intended to encourage you to transfer often, but to give you the opportunity to transact when you want to, without delay.

## TYPES OF INVESTMENTS

You may elect to have your contributions invested in any or all of the following investment funds.

## Preferred Stable Principal Fund

The Preferred Stable Principal Fund will invest in shares of the Preferred Fixed Income Fund, the Preferred Short-Term Government Securities Fund, and the Preferred Money Market Fund, and in benefit responsive agreements with certain high quality financial institutions. The benefit responsive agreements must be rated at least Aa1/AA+ (Moody's/S&P) at inception of the agreement. The target duration of the Fund will be between 3.5 and 4 years, but it will be allowed to be as short as 1.5 years and as long as 5 years. The portfolio will seek to maintain an overall average dollar weighted credit of Aa/AA (Moody's S&P) with issuer and industry concentration limitations as specified within the Preferred Fixed Income Fund, Preferred Short-Term Government Securities Fund, and Preferred Money Market Fund prospectus.

## Preferred Money Market Fund

The Preferred Money Market Fund seeks the maximum current income believed to be consistent with preservation of capital and maintenance of liquidity by investing in a portfolio of U.S. dollar-denominated short-term, fixed income instruments which include: short-term U.S. Government Securities; certificates of deposit and bankers' acceptances; prime commercial paper; high-quality short-term corporate obligations; and repurchase agreements with respect to U.S. Government Securities. All of the fund's investments will, at the time of investment, have remaining maturities of 397 days or less. The dollar-weighted average maturity of the funds' portfolio will be 90

days or less. Because of the high quality and short maturity of the fund's investments, the fund's yield may be lower than that of funds that invest in lower-rated securities and securities of longer maturities. Unlike investments which pay a fixed yield for a stated period of time, money market fund yields fluctuate.

## Caterpillar Stock Fund

Investments will be made in Caterpillar Inc. common stock which is purchased by the trustee. These shares can be purchased from any source, including Caterpillar Inc. Any dividends will automatically be reinvested in additional shares of Caterpillar stock. The purchase price of the shares will be the average price per share paid by the trustee for such shares excluding brokerage commissions, transfer taxes or any other transaction costs. The shares in your account will be adjusted as necessary to reflect appropriately the effect of any stock dividend, stock split, subdivision, reclassification or combination of shares. Shares in your account are voted at shareholders' meetings in whatever manner you instruct the trustee.

## Preferred Short-Term Government Securities Fund

The Preferred Short-Term Government Securities Fund will invest primarily in securities issued or guaranteed as to principal and interest by the U.S. Government, its agencies, authorities or instrumentalities. The yield available from U.S. Governme it Securities are generally lower than the yields available fro n otherwise comparable corporate fixed-income securities; however, like other fixed-income securities, the values of U.S. Government Securities change as interest rates fluctuat . Fluctuations in the value of portfolio securities will not affect interest income on existing portfolio securities but will l e reflected in the fund's net asset value. In order to minimize risk, the fund will maintain an average dollar weighted portfolio maturity of not more than three years and will typically purchase securities with remaining maturities of less than five years.

## Preferred Value Fund

The Preferred Value Fund will invest primarily in equity securities (common stocks, preferred stocks and securities convertible into common stocks) that are believed to be undervalued and that offer above-average potential for capital appreciation. In selecting securities, the fund seeks companies that have a high return on equity and assets, a large undedicated cash position and a potential for above-average increases in the amount of their dividends. Under normal market conditions, equity securities will constitute at least 65% of the Value Fund's assets; however, the fund may also invest in other securities, including obligations issued or guaranteed by the U.S. Government or its agencies, authorities or instrumentalities, corporate bonds or short-term debt obligations.

## Preferred Growth Fund

The Preferred Growth Fund will invest primarily in equity securities believed to offer the potential for capital appreciation, including stocks of companies that are experiencing above-average earnings growth. Under normal market conditions, equity securities will constitute at least 65% of the Growth Fund's assets. However, the fund may also invest in other securities, including obligations issued or guaranteed by the U.S. Government or its agencies, authorities or instrumentalities, corporate bonds or short-term debt obligations.

## Preferred International Fund

The Preferred International Fund will invest primarily in equity securities traded principally on markets outside the United States that are believed to be undervalued and that offer above-average potential for capital appreciation. Under normal market conditions, equity securities traded principally on markets outside the United States will constitute at least 65% of the International Fund's assets. The securities markets of many nations can be expected to move relatively independently of one another, because business cycles and other economic or political events that influence one country's securities markets may have little effect on the securities markets of other countries. By investing in a foreign portfolio, the International Fund seeks to reduce the risks associated with investing in the economy of only one country.

## Preferred Asset Allocation Fund

The Preferred Asset Allocation Fund is managed by two independent management services, each managing one half of the assets contributed to the fund. The asset allocation strategy invests in common stocks included in the S&P 500 Index; highly liquid, investment grade treasury, agency or corporate bonds with average maturity of 10-30 years; and money market instruments. Given a trade-off between risk and return, the strategy seeks to select an appropriate mix of stocks, bonds and cash that will maximize expected risk-adjusted returns over a ten-year holding period. The asset allocation strategy typically lags a rising stock market and outperforms the market when it is down. Since this pattern is the reverse of what most active equity mangers experience, the strategy is intended to reduce volatility when combined with actively managed assets.

## Preferred Fixed Income Fund

The Preferred Fixed Income Fund invests primarily in U.S. Treasury and agency obligations, mortgage-backed securities and corporate debt securities, and supplemented by the investment in the "extended" fixed income markets (e.g., corporate private placements, directly placed mortgage obligations and foreign currency denominated bonds) to increase the potential for higher returns with reduced volatility. Under normal circumstances at least 65% of the portfolio will be invested in the preceding types of debt securities with a duration range of 3-7 years (intermediate term maturities). The rate of return for the fund will vary as interest rates and the fund's holdings change. There is a risk that the rate of return may be lower or even negative in periods of rising interest rates, when the market value of fixed income securities normally decrease. However, during periods of declining interest rates, the rate of return will be enhanced through the increase in the market value of the securities. This fund is best used in combination with equity funds to create a balance, long-term investment strategy.

## Preferred Small Cap Fund

The Preferred Small Cap Fund seeks to invest in approximately 200 small company stocks that demonstrate growing earnings and moderate valuation. Under normal market

conditions, the Fund will invest at least 65% of its total assets in common stock and other equity securities of small-capitalization issuers (generally defined as companies with equity capitalizations of less than $1 billion). Small capitalization company securities will be selected for the fund according to a variety of factors, including a company's earnings, price/cash flow ratio, market price to book value, earnings/price ratio, and various technical analyses.

**Brokerage Option**

The Brokerage Option is available through State Street Brokerage Services. The Brokerage Option will initially offer about 2,000 mutual funds.

Some funds will be "load" funds and some will be "no load" funds. A prospectus for a specific fund will be mailed to you upon request from State Street Brokerage Services. The fund prospectus will provide information, including charges, fees and expenses. You should read the fund prospectus carefully before you invest.

The mutual funds offered through the Brokerage Option are expected to change from time to time.

You should be aware that the different investment options under EIP Part 2 have varying degrees of risk. The following chart indicates the risk level and provides brief comments regarding the funds.

| FUNDS | RISK LEVEL | COMMENTS |
| --- | --- | --- |
| Preferred Money Money Market | Low | Investment objective focuses on income with stability and liquidity. |
| Preferred Stable Principal Fund | Low | Investment objective focuses on preservation of principal while generating current income. |
| Preferred Short-Term Government Securities Fund | Low | Investment objective focuses on income through the purchase of government securities. |
| Cat Stock Fund | High | Investment objective seeks long-term growth by investing in a non-diversified portfolio of Caterpillar stock. |
| Preferred Value Fund | High | Investment objective focuses on growth and secondarily income through the purchase of stocks perceived to be undervalued. |
| Preferred Growth Fund | High | Investment objective focuses on growth through the purchase of stocks with above average growth potential. The Preferred Growth Fund is not exclusively a small company stock fund but may purchase small company stocks as deemed attractive. |
| Preferred International Fund | High | Investment objective focuses on growth through the purchase of non-U.S. stocks. |
| Preferred Small Cap Fund | High | Investment objective focuses on long-term capital appreciation through investment in smaller U.S. companies. |
| Preferred Asset Allocation Fund | Moderate | A balanced fund that seeks growth and income through a changing mix of stocks, bonds, and money market instruments. |
| Preferred Fixed Income Fund | Moderate | Investment objective focuses on income through the purchase of intermediate term fixed income securities. |

The prospectus prepared by the fund management for each of the above funds is available at your Benefits Office. Please refer to those prospectuses for a complete description of each fund and its performance.

## TRANSFERRING FUND BALANCES

All or part of your fund balances of any type of investment may be transferred to another type of investment on a daily basis. You may transfer funds in your account between investment options when the financial markets are open by utilizing one of the two methods: a toll - free telephone service described in the section TELEPHONE VOICE RESPONSE, or by written notice on a form provided by the Company. The written notice must be received and processed by the Company before 3:00 p.m. Central time for an election to be effective that day. Transfer elections initiated when the financial market is not open will be effective at the close of the next business day.

## TELEPHONE VOICE RESPONSE

The computer-based voice response system allows you to access your account from a touch-tone telephone 24-hours a day at 1-800-828-8100. The Company I.D. number (2358), and your Personal Identification Number (PIN) which is issued to you upon enrollment in the Plan, will allow you to secure access to your account.

The Plan "Benefits Express" line offers you personal information about your account plus the following:

- the net asset value of each fund and the yield for bond and money market funds as of the close of the previous day;

- your total portfolio value, total vested value, value by fund, value by contribution type, and available hardship withdrawal amount;

- details of any outstanding loans, available loan amounts, and initial loan applications; and

- the ability to transfer funds in your account between investment options when the financial markets are open. All telephone transfers will automatically generate a written confirmation from the plan recordkeeper to provide you with a historical record of your transfer activity.

## NO GUARANTEE

There is no guarantee under the Plan against loss.

Upon distribution, if you have assets in funds that are invested primarily in shares of common stock, you will receive the value of your account in shares of those funds. However, just as with any other shareholder, these shares may then be worth more or less than their purchase price. In seeking the benefits of share ownership, you also accept the risks.

Likewise, usually because of fluctuations in interest rates, the value of government obligations also fluctuates. If you elect to invest in the Preferred Short-Term Government Securities Fund, and if you receive a distribution from the fund at a time when the market price of government obligations purchased by the fund is less than the purchase price, you may receive less than your investment in the fund. Also, the income of the Preferred Money Market Fund, Preferred Short-Term Government Securities and The Preferred Fixed Income Fund will fluctuate with the rise and fall of interest rates and will affect your return from these funds

## LOANS

You may borrow money from your account with repayments, including interest, being credited directly back into your account. Loans are administered by the Investment Plan Committee or its delegate.

### Eligibility

You must have at least one year of participation in EIP Part 2, have a minimum of $2,000 in your account and be on active payroll with Caterpillar or one of the other covered companies in order to be eligible for a loan.

## Applying For a Loan

Loan applications are processed weekly. To apply for a loan, you may either request a loan through the Telephone Voice Response System or complete a Loan Application form. You are not required to provide any personal financial information. After the Loan Application has been approved by the Loan Administrator, you will be sent a Promissory Note. This Note must be completed and returned to the Company for processing along with a required loan fee as explained below. The only security required for the loan will be part or all of your assets in your account.

Federal law requires married employees applying for a loan to have their spouse acknowledge and consent to the loan before a notary or a Company benefits representative. Therefore, this requirement is part of the Promissory Note.

You may withdraw or change a loan application before the loan effective date. After the loan effective date, the loan will be processed and a check issued. You may repay the full loan balance plus accrued interest if you change your mind after the loan effective date.

## Loan Amounts

You may borrow from $1,000 up to a maximum of $50,000 in whole dollar amounts, but no more than 50% of the value of your account balance.

You will receive a check, by mail, for your loan amount the week following the effective date of your loan.

## Types of Loans

Two types of loans are available: (1) Home Loans may be made to build or purchase your principal residence, and the repayment period can range from 6 to 117 months; (2) General Loans may be made for any other reason, and the repayment period can range from 6 to 57 months.

## Number of Loans Available

You may have a maximum of 2 loans outstanding at any one time, but there is a waiting period of 3 months between loan effective dates. The second loan cannot exceed $50,000 less the highest outstanding balance of the first loan during the 12-month period preceding the effective date of the second loan. Also, the second loan cannot exceed 50% of the market value of your account minus any unpaid balance of your first loan.

## Loan Fee

There is a fee for each loan equal to 1% of the loan amount with a $25 minimum and a $50 maximum.

## Repayments

Repayments, including interest, are credited to your Loan account and transferred into your funds according to your latest investment election.

Repayment of your loan will be through payroll deductions (on an after-tax basis).

## Prepayments

You may prepay, by check or money order, the outstanding principal and interest of your loan in 25%-50%-75%-100% increments, at any time, without a penalty. Checks, or money orders, should be made payable to Caterpillar Inc.

## Loan Interest Rate

The loan interest rate will be the prime interest rate as publicly announced by the Chase Manhattan Bank of New York as its prime commercial lending rate, plus 1%, and then rounded up or down to the nearest whole percent. The available rate will change quarterly. The loan interest rate in effect when you take out a loan will remain the same for the term of that loan.

## Interest Not Deductible

The interest you pay on your loan is not tax deductible - this applies to both Home Loans and General Loans.

## Loan Accounting

On the loan effective date, the loan amount will be transferred to a Loan account. The amount requested will be paid by check. To obtain the proceeds, assets in your account will be sold on a pro rata basis until the necessary amount is obtained. After the loan effective date, the money withdrawn for your loan will not be credited with investment income until you repay it. Repayments and prepayments, including interest, are credited to your Loan account and transferred into your funds according to your latest investment election.

## Loan Default

If repayments are missed for 45 days, the unpaid balance is deemed to be a distribution. Therefore, if payroll deductions are not available to you, you must make repayments by personal check or money order. NOTE: If loan repayments are not made within the specified time, the IRS requires that the unpaid balance will be treated as a premature distribution subject to federal taxes and penalties imposed by the Internal Revenue Code.

## Loan Balance at Termination of Employment

Should you have an outstanding loan balance when you terminate employment with the Company for any reason, including retirement or death, the full account balance distributed, plus the unpaid loan balance, will be reported as a taxable distribution. If you wish to defer your distribution, you must repay the full outstanding loan balance before your termination date.

## Loan Reporting

Your outstanding loan balance and repayments will be reported on your Quarterly Statement.

## WITHDRAWAL OF ASSETS FROM THE FUNDS

You may apply for a withdrawal of Part 2 assets in your account, with your Spouse's consent, if you have attained at least

age 59-1/2 or at any age if you have incurred a severe financial hardship. Only one withdrawal will be allowed each plan year.

A withdrawal for a financial hardship must be (1) necessary to meet immediate and heavy financial needs, (2) for an amount required to meet the immediate financial need created by the hardship, and (3) for an amount that is not reasonably available from other resources (including your assets, assets of your spouse and minor children, insurance proceeds and loans from the Plan or commercial lenders). You have to certify that those requirements are met. If those requirements are met, hardship withdrawals will be allowed due to one or more of the following events: (a) the need to prevent eviction from your principal residence or foreclosure on the mortgage on your principal residence; (b) purchase (excluding mortgage payments) of your principal residence; (c) payment of tuition and related educational fees for the next semester or quarter of post-secondary education for you or your dependent(s) who can be claimed as such on your federal income tax return for the then-current year; (d) payment of medical expenses which you are obligated to pay and which are not covered under any insurance you have; or (e) any other reason acceptable under published IRS regulations and rulings.

If you are under age 59-1/2, there is a 10% penalty tax on the amount withdrawn (except to the extent the amount withdrawn is less than your tax-deductible medical expenses, if any).

### DISTRIBUTIONS AFTER ATTAINING AGE 70-1/2

If you are still working at age 70-1/2 the Internal Revenue Code requires that distributions from the Plan begin no later than April 1 of the tax year following the year in which you attain age 70-1/2. Affected employees will be notified.

### TRUSTEE-TO-TRUSTEE TRANSFER

If you become employed by the Company and receive a lump sum distribution of assets from the qualified plan (as defined by the Internal Revenue Code) of your previous employer, you may have the trustee of that plan transfer all or part of the assets to the trustee under EIP Part 2. For this purpose you do not have to be

age 21 but you must meet all of the other requirements as described under "Who May Join?" (See page 5.)

If the assets to be transferred include property other than cash, the trustee will sell such property. Amounts transferred may be invested in any of the investment funds under Part 2.

If you separate from employment, you may elect to have the Plan's trustee transfer all of the assets in your accounts directly to the trustee of any other qualified pension or profit sharing plan that accepts such transfers.

## ROLLOVER CONTRIBUTION FROM A QUALIFIED PLAN

If you have received a Qualifying Rollover Distribution, as defined by the Internal Revenue Code, you may within 60 days of receipt thereof make a Rollover Contribution of all or a part of that distribution. For this purpose you do not have to be age 21 but you must meet all of the other requirements as described under "Who May Join?" (See page 5.)

A Qualifying Rollover Distribution means any amount in excess of after-tax employee contributions which were included in a total distribution from a pension, profit sharing, savings, or other comparable employee benefit plan of another employer.

A Rollover Contribution must be made solely in cash. Amounts transferred may be invested in any of the investment funds under Part 2.

## FEDERAL INCOME TAXES

The amount of your contribution is considered a "salary reduction" and is not subject to federal, and in most cases state or local, income taxes. Since you do not pay federal income tax on the contribution amounts going into Part 2 or any earnings, your distribution will be taxed in the year that it is distributed to you.

(1) You will pay no income tax on your contributions, or earnings received by the trustee, until assets in your accounts are distributed to you.

(2) When the assets in your accounts are distributed to you, you will be taxed as follows:

• Distributions At Termination Of Employment (whether by retirement, death, or for any other reason) -

• If the amount distributed to you qualifies as a lump-sum distribution you may be able to make a one-time election to have the distribution taxed under special five-year averaging rules. (Five-year averaging, which may be elected only once during your life, would reduce the amount of income tax otherwise payable on a total distribution). To elect five-year averaging, you must be at least age 5) 1/2, you must have participated in the plan for any part of at least five years prior to the year of distribution, and you must not have had a rollover of plan assets to an IRA or another plan.

• If you were born before January 1, 1936, have not had a rollover of plan assets, and you participated in the plan for any part of at least five years prior to the year of distribution, you have a one-time opportunity to choose:

    Five-Year averaging using current tax rates; or

    Ten-Year averaging using 1986 rates.

Note: Even if you plan to use the special averaging method, the mandatory 20% federal withholding tax will be withheld (see "Federal Income Tax Withholding" page 23).

Generally, a 10% penalty tax will apply on the taxable portion distributed if you are under age 59 1/2 at the date of distribution (except to the extent the distribution is less than your tax-deductible medical expenses, if any). However, the 10% penalty tax does not apply when the distribution is: (a) because of retirement or other termination of employment after age 55, (b) rolled over to an IRA or another

qualified plan within 60 days of receiving the distribution, (d) paid to a beneficiary, or (e) because of total and permanent disability.

## Required Tax Notice Regarding Plan Payments

You have choices under these rules, but there are different tax consequences connected with each choice. Before you elect any distribution, you should consult a tax advisor when deciding what course to follow.

## Rollovers

You are required to pay taxes on the taxable portion of plan distributions. However, you can avoid current taxation in two ways. Both of these methods involve moving all or part of the taxable portion into another qualified employer retirement plan or an individual retirement arrangement (IRA). If you use either of these methods, you will be taxed later when you take a payment from the other retirement plan or IRA.

## If you choose a Direct Rollover

Your distribution will be made directly to your IRA or, if you choose, to another employer plan that accepts direct rollovers. Your distribution will not be taxed in the current year and no income tax will be withheld.

Your distribution will be taxed later when you take it out of the IRA or the employer plan.

## If you choose to have your distribution Paid To You.

You will receive only 80% of the taxable portion of a cash distribution, because the plan administrator is required to withhold 20% of the taxable portion and send it to the IRS as income tax withholding (20% withholding would not apply if only Company stock is distributed).

Your taxable portion will be taxed in the current year unless you roll it over. For total distributions you may be able to use special averaging rules that could reduce the tax you owe (see below). However, if you receive such a distribution before age 59 1/2, you may have to pay an additional 10% penalty tax.

You can roll over the taxable portion by paying it to your IRA or to another employer plan that accepts your rollover within 60 days of receiving the distribution. The amount rolled over will not be taxed until you take it out of the IRA or employer plan.

If you want to roll over 100% of the taxable portion of the distribution, you must find other money to replace the 20% that was withheld. If you roll over only the 80% that you received, you will be taxed on the 20% that was withheld and is not rolled over.

## Federal Income Tax Withholding

As noted above, if the taxable amount is actually distributed to you, then the plan must withhold federal income taxes from your distribution. The amount withheld will equal 20 percent of the taxable portion of your distribution. The 20% federal withholding applies to the cash portion of your taxable distribution(s) — company shares are exempt from the withholding.

You cannot elect out of this withholding. If you authorize a distribution, the only way to prevent withholding is to elect a direct transfer of the entire taxable portion to your IRA or to another employer plan that accepts rollovers.

If you make a direct rollover or any rollover of any distribution from the plan you will not be able to use 5 or 10-year special averaging tax treatment on any amounts remaining in your account at termination of employment.

• • • • • • • • • • •

The above covers the principal federal income tax rules applicable to the usual case under present law. Before making elections permitted by the Plan, you may wish to discuss the matter with a qualified tax advisor. This is also true if you live in a state which has a state income tax law. Also note that ADDITIONAL TAX MAY ALSO BE PAYABLE when you sell the shares.

## PAYMENT OPTIONS

## Lump Sum Distribution

Upon termination of employment, you will be entitled to receive all of the assets in your accounts in a single lump sum

distribution. In addition, if you are eligible you may elect another form of payment as described below.

## Annuity Contract

Upon retirement you may also elect, with your Spouse's consent, to convert all or part of the assets in your account to some other form of an annuity which will provide monthly income to you and, after your death, possibly to a beneficiary. Such other forms of annuity are also available if termination of employment is due to total and permanent disability.

If you retire, you must file an election form with the Company no later than the first business day of the month immediately preceding the month your retirement begins. If your employment is terminated because of total and permanent disability, you must file this election with the Company on a business day at least 30 calendar days prior to your date of termination. In the event of your death, your beneficiary(ies) may elect to convert all or part of the shares to an annuity. In general, you may choose among annuity options for a lifetime with a years certain provision, for the lifetime of more than one person, or for a specific period of time. More detailed information may be obtained by contacting your Benefits Office.

## Installment Distribution

Upon retirement you may elect, with your Spouse's consent, to have the assets in your account distributed in annual installments, not to exceed 15. You may also elect an installment distribution in the event of total and permanent disability. If you retire, you must file this election with the Company on or before the first business day in the month prior to your retirement date. If your employment is terminated because of total and permanent disability, you must file this election with the Company on a business day at least 30 calendar days prior to your date of termination. In the event of your death, your beneficiary(ies) may elect to have the shares in your accounts distributed in installments.

Under most circumstances, installment distributions will produce a different tax result than a single distribution.

## Deferred Distribution

Upon termination of employment, you may make an election to defer the entire distribution of your accounts for any period that does not extend beyond the month you reach age 70.

You must file this election with the Company on a business day on or before the date of your termination. You may later cancel your election and receive your distribution earlier by notifying the Company in writing. Distribution will be made in the month elected by you or as soon as practicable after your cancellation is received.

Therefore, you should discuss with your tax counsel any tax consequences that will result from your electing an installment distribution.

## Annual Withdrawal

If you defer your distribution you will have the option to elect an annual withdrawal from Part 2. Only one such withdrawal can be made from your account each calendar year and the minimum amount that you can withdraw is $1,000. To obtain the necessary cash for the withdrawal, the assets in your account will be sold on a pro-rata basis until the necessary amount is obtained. (For instance, if 62% of your assets are in the Caterpillar stock fund, and 38% in the Preferred Stable Principal fund, then 62% of the amount of your withdrawal would come out of your Caterpillar stock fund and 38% out of your Preferred Stable Principal fund.)

Note: When you use this type of payment option you will lose the ability to use the special five or ten-year treatment on all future distributions. Also, the taxable amounts withdrawn will be included in your gross income in the tax year they are received and are taxable as ordinary income. You may also be subject to an additional 10% penalty tax. You may wish to consult with your tax advisor before making this type of withdrawal.

## BENEFICIARIES

If you die prior to the complete distribution to you of the assets in your accounts and you were married to your Spouse for at least the one year period prior to the time of your death, 50% of

the assets in your accounts must be paid to your surviving Spouse unless your Spouse has consented in writing to a different beneficiary designation. The consent signed by your Spouse must be witnessed by a Company benefits representative or be notarized. Any assets so payable to your Spouse will be used to purchase a straight life annuity unless prior to the purchase your Spouse elects to receive distribution in a single lump sum or in one of the other payment forms described in the Payment Option section. You may designate a beneficiary to receive, in the event of your death, the assets in your accounts which are not paid to your surviving Spouse and you may change your beneficiary at any time.

## EFFECT ON OTHER EMPLOYEE BENEFITS

All Company benefit plans will continue to be based on your compensation before your deductions for EIP Part 2. For example, your life insurance will not be affected by your deductions for the Plan.

The explanation of the EIP Part 2 contained in this Prospectus cannot, of course, cover in full all details of the Plan. If you have any questions about the Plan, or if you want to make a change in your contributions or status under the Plan, please contact your Benefits Office. They will be glad to help you or give you information about the operation of the Plan. You may obtain the appropriate forms for any of the elections permitted by the Plan from the Company.

# SECTION 2

# ADDITIONAL INFORMATION

## ADMINISTRATION

The Plan is administered by the Investment Plan Committee, who is responsible for all aspects of the plan except for certain financial matters which are the responsibility of the Benefit Funds Committee of the Company. The Chairman of the Board of Caterpillar Inc. has the authority under the Plan to appoint or remove the members of each Committee and fill any vacancies thereon. Present members of the Investment Plan Committee are D. V. Fites, D. R. Oberhelman, J. W. Owens, and W. M. Zimmerman. Present members of the Benefit Funds Committee are R. R. Gallagher, D. R. Oberhelman, J. W. Owens and R. W. Wuttke. All such members are officers of Caterpillar Inc. and the business address of each is 100 N.E. Adams Street, Peoria, Illinois 61629. The telephone numbers for the Committees are: (309) 675-4899) and (309) 675-4208. The Investment Plan Committee is the agent for the Plan for purposes of service of legal process. Service of legal process may also be made upon the Plan trustee.

The members of the Committees receive no additional compensation for their services as members. The Investment Plan Committee interprets the Plan provisions and prescribes regulations and forms in connection therewith. Any interpretation of the provisions of the Plan by such Committee is final and conclusive.

## TRUSTEE

The Northern Trust Company, 50 South LaSalle Street, Chicago, Illinois 60675, has been appointed to act as trustee under the Plan. A trustee may be changed by action of the Benefit Funds Committee. The trustee has custody of the funds received by it from the participating companies as employee or

employer contributions or received as earnings thereon and makes all investments pursuant to the Plan. At the direction of the Benefit Funds Committee, a trustee may borrow on behalf of the trust and the trust funds may be pledged to secure such borrowings.

## AMENDMENT AND TERMINATION

The Company expects the Plan to continue indefinitely but reserves the right to amend, modify, suspend or terminate the Plan at any time, subject to the limitations hereinafter described. Any change in the Plan that affects the rights or duties of the Investment Plan Committee, the Benefit Funds Committee, or the trustee may be made only with its consent, as the case may be. Certain modifications that adversely affect the benefits of a participant cannot have a retroactive effect except to the extent necessary to qualify or maintain the Plan and the trust created thereunder as a Plan and trust meeting the requirements of Sections 401(a), 401(k) and 501(a) of the Internal Revenue Code of 1986 (as amended) or any other applicable laws or regulations.

## SECTION 404(C) OF ERISA

The Employees' Investment Plan (Part 2) is intended to constitute a plan described in Section 404(c) of the Employee Retirement Income Security Act (ERISA) and title 29 of the Code of Federal Regulations Section 2550.404 c-1. The Plan offers participants the opportunity to exercise control over the assets in their accounts by allowing them to choose how their assets will be invested and by providing them with information necessary to make informed decisions in reference to the investment options available. Investments are therefore made under the Plan in accordance with instructions given by participants. As a result, Plan fiduciaries may be relieved of liability for any losses that are the direct and necessary result of investment instructions given by participants.

In reference to investment in Caterpillar Stock, the Plan has strict confidentiality procedures to safeguard information relating to the purchase, holding and sale of shares and the exercise of voting, tender and similar rights of plan participants. Exceptions

can be made to the extent necessary to comply with applicable law.

Employees whose job responsibilities relate to plan administration are instructed and expected to maintain confidentiality of information pertaining to individual plan participant accounts and transactions.

In addition, by action of the Board of Directors, the Company has established the "Caterpillar Inc. Policy on Confidential Proxy Voting and Independent Tabulation and Inspection of Elections" and the transfer agent for Caterpillar stock certifies that all of its personnel (engaged in the receipt and tabulation of proxies, ballots, and voting materials for shareholder meetings) have complied with such Policy.

Participants may request the following information from the Investment Plan Committee who is responsible for delivering the latest information available upon such request: a description of annual operating expenses for each investment option (for example, administrative fees or transaction costs) and the aggregate amount of such expenses expressed as a percentage of average net assets; copies of Plan prospectuses, financial statements, reports and other materials relating to investment options under the Plan (including, but not limited to, any information on voting, tender and similar rights of plan participants); a list of assets comprising the portfolio of each investment option (including, for fixed rate investment contracts, the name of the issuer of the contract, the term of the contract and the rate of return on the contract); the value of each such asset (or the proportion of the investment option which it comprises); information concerning the value of shares or units in investment options available under the Plan, as well as the investment performance of each investment option; and information concerning the value of shares or units in each investment option held in the account of the participant.

## OTHER INFORMATION

All expenses of administration, with the exception of certain expenses under the Brokerage Option, (such as brokerage commissions, stock transfer taxes and trustee fees) are paid by the Company. (This does not include taxes, if any, imposed on the employee, the employee's interest in the trust fund, or the trust)

Employees invested in the Brokerage Option are charged an annual account fee, plus applicable transaction costs.

You will receive a semiannual statement reflecting the status of your accounts.

Except as respects an indebtedness owing to the Company, your rights under the Plan may not be voluntarily or involuntarily sold, transferred, or assigned before the time they are distributed to you or your beneficiary. Any assignment to the Company shall be revocable and shall not exceed 10% of the amount payable under the Plan.

The Plan is subject to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), including reporting and disclosure obligations to Plan participants, fiduciary obligations of Plan administrators, and minimum vesting requirements. The Plan is a qualified profit-sharing plan and therefore is not insured nor is it required by ERISA to be insured by the Pension Benefit Guaranty Corporation.

The Plan was not established nor is it maintained pursuant to a collective bargaining agreement. However, the Plan has been extended to members of certain bargaining units.

As a participant in the Employees' Investment Plan, you are entitled to certain rights and protections under ERISA. ERISA provides that all Plan participants shall be entitled to:

(1) Examine without charge at the Benefits Office at your location, all Plan documents, including applicable collective bargaining agreements and copies of all documents filed by the Plan with the U.S. Department of Labor, such as annual reports and plan descriptions.

(2) Obtain copies of all Plan documents and other Plan information upon written request to the Plan administrator. The administrator may make a reasonable charge for the copies.

(3) Receive a summary of the Plan's annual financial report.

(4) Obtain a statement telling you whether you have a right to receive a benefit at normal retirement age (age 65) and if so, what your benefits would be at normal retirement age if you stop working under the Plan now. If you do not have a right to a benefit, the statement will tell you how many more years you have to work to get a right to a benefit. This statement must be requested in writing and is not required to be given more than once a year. The Plan must provide the statement free of charge.

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your employer, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.

If your claim for a benefit is denied in whole or in part, you must receive a written explanation of the reason for the denial. You have the right under the Plan to request a review and reconsideration of your claim. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the Plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan administrator to provide the materials and pay you up to $100 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

If you have any questions about this statement or your rights under ERISA, you should contact the Benefits Office at your location or the nearest Area Office of the U.S. Labor-Management Service Administration, Department of Labor.

The employer identification number (EIN) is 37-0602744 and the Plan number (PN) is 003.

If any dispute arises concerning any aspect of the Plan, you have a right to request a written statement of the Company position from your Human Resource representative at your location. Upon receipt of such statement or within 30 days after the request for such statement if no such statement is received, you have a right to request a review of the matter in dispute by making written request to the Investment Plan Committee. A written decision concerning the matter in dispute will be rendered by the Investment Plan Committee within 60 days after receipt of such a request for review, unless special circumstances require an extension of time, but in no case may time be extended to more than 120 days after receipt of such a request.

While the Plan does not place restrictions on resale of common stock distributed to you, participants in a position to control the Company's basic management policy should consult counsel with respect to possible limitations under Federal and State securities laws with respect to any such resale.

## INFORMATION INCORPORATED BY REFERENCE

The following documents are hereby incorporated by reference into this Prospectus:

(1) Caterpillar Inc.'s most recent Annual Report on Form 10-K filed pursuant to Section 13 of the Securities Exchange Act of 1934 (the "1934 Act") which contains among other things certified financial statements for its fiscal year ended December 31.

(2) The most recent Annual Report of the Plan on Form 11-K pursuant to Section 15(d) of the 1934 Act which contains among other things certified financial statements of the Plan.

(3) A description of the Company's Common Stock which is contained in Form S-8 (Registration Statement No. 33-39280) filed pursuant to the Securities Act of 1933.

(4) Information as to Three Year Comparison and certain other matters contained in future Appendices or supplements to this Prospectus or any ERISA Summary Plan Description utilized to update this Prospectus.

All reports or other documents subsequently filed by Caterpillar Inc. pursuant to Sections 13, 14 and 15(d) of the 1934 Act, prior to the filing of a post-effective amendment which indicates that all securities offered have been sold or which deregisters all securities then remaining unsold, shall be deemed to be incorporated by reference in this Prospectus and to be a part hereof from the date of filing of such reports or other documents.

## FURTHER INFORMATION

A copy of Caterpillar Inc.'s most recent Annual Report to its shareholders for the year ended December 31 has been or will be delivered to each person receiving a copy of this Prospectus. Each participant under the Plan will also be furnished with all reports, including future Annual Reports of Caterpillar Inc., proxy statements and other communications distributed to shareholders of Caterpillar Inc. generally. A copy of the Annual Report of the Plan will be furnished without charge to each participant under the Plan upon written request to your Benefits Office.

## EXPERTS

Consolidated financial statements incorporated in this Prospectus by reference to the Annual Report on Form 10-K of Caterpillar Inc. have been incorporated in reliance on the report of Price Waterhouse, independent accountants, given on the authority of said firm as experts in auditing and accounting.

## ANNUALIZED RATE OF RETURN

Participants are routinely sent information on performance of the various investment options under EIP Part 2.

34

The following are the annualized rate of return of the nine investment options under EIP Part 2 from 7-1-92 thru 12-31-95.

| | |
|---|---|
| Caterpillar Stock Fund | 25.3% |
| Preferred Money Market Fund | 3.9% |
| Preferred Growth Fund | 17.4% |
| Preferred International Fund | 9.0% |
| Preferred Value Fund | 15.4% |
| Stable Principal Fund | 6.0% |
| Preferred Assets Allocation Fund | 13.0% |
| Preferred Fixed Income Fund | 8.4% |
| Preferred Short Term Government Fund | 4.7% |

The above table and rates of return are not necessarily indicative of future experience, which will be dependent in subsequent years upon market prices including prices of shares of stock and government obligations and the respective dividend and interest rates on these securities.

## AMENDMENT TO THE EMPLOYEES' INVESTMENT PLAN

WHEREAS, Caterpillar Inc. (the "Company") maintains the Employees' Investment Plan (the "Plan"); and

WHEREAS, the Plan has previously been amended and further amendment of the Plan is now desirable:

NOW, THEREFORE, by virtue of the power granted by Section 13 of the Plan, the Plan be and it hereby is amended, effective as of December 1, 2002 (except as otherwise provided below), as follows:

(1)     Section 3.4(c) of the Plan is amended, effective as of December 1, 2002, by the deletion of Section 3.4(c) in its entirety and the substitution of the following new Section 3.4(c) in lieu thereof:

"Effective as of December 1, 2003, in accordance with Code Section 401(a)(17), the annual compensation of each eligible employee taken into account for all purposes of this Plan for any plan year shall not exceed $200,000, as such amount may be adjusted for cost-of-living adjustments under Code Section 401(a)(17). In no event shall compensation under the Plan for accrual purposes for any plan year exceed the maximum allowed under Code Section 401(a)(17)."

(2)     Section 4.4 of the Plan is amended by adding the following two sentences at the end thereof:

"For plan years beginning after December 31, 2001, the dollar amount referred to above shall be changed to $40,000 and the percentage shall be changed to 100%."

(3)     Section 7.1(c) of the Plan is amended by substituting the phrase "25 months" for the phrase "24 months" in each instance in which it appears in Section 7.1(c).

(4)     Section 7.2(b)(i) of the Plan is amended, effective as of December 1, 2002, to read as follows:

"because of total and permanent disability, which, for purposes of the Plan, shall mean the participant is entitled to primary disability benefits under Title II of the federal Social Security Act; or"

(5)     Section 7.3(b) of the Plan is amended, effective for plan years beginning after December 31, 2001, by replacing the first sentence thereof with the following sentence:

"If a participant has one hour of service on or after December 1, 2002, and has three or more years of service, he shall have a fully vested interest in the assets of his Participant Accounts for all classes (notwithstanding any provision of the Plan to the contrary)."

1

(6)     Section 7.11 of the Plan is amended by the addition of the following new paragraph (c):

"(c)    During the plan year beginning on December 1, 2002, the assets of the trust fund established and maintained for under the Plan and under the Special Investment Supplement for certain management and salaried participants shall be transferred to the Caterpillar 401(k) Plan. The transfer of such assets and corresponding liabilities shall be made at such time or times and in the manner determined by the Investment Plan Committee, provided that the committee shall ensure that each affected participant shall receive a benefit in the event of a termination immediately after such transfer which is equal to or greater than the benefit the participant would have been entitled to receive if the Plan had terminated immediately prior to such transfer."

(7)     Section 3.1 of the Special Investment Supplement of the Plan is amended by the addition of the following language at the end thereof:

"Effective as of January 1, 2003, a participant who has attained the age of 50 (or will attain the age of 50 during the calendar year), and whose compensation reduction contribution is limited by Section 2.4 of the Plan or any of the other limitations set forth in the Plan, may elect to have Catch-Up Contributions made under this Supplement to the Plan. Except as otherwise specifically provided, Catch-Up Contributions shall be treated as employer basic contributions for all purposes of the Plan, but shall not be subject to any of the limitations contained in by Code Section 402(g), 404(a) or 415, and the Plan shall not be treated as failing to meet the requirements of Code Section 401(a)(4), 401(k)(3), 401(k)(12), 410(b) or 416 by reason of the making (or the right to make) Catch-Up Contributions. The maximum amount of Catch-Up Contributions that may be made on behalf of a Participant for any Plan Year under this Plan and all other plans required to be aggregated with this Plan shall not exceed the dollar amount set forth in the following table. The Investment Plan Committee shall adopt procedures providing for eligible Participants to elect to have Catch-Up Contributions made in accordance with Treasury Regulations issued pursuant to Code §414(v).

| Plan Year | Dollar Limitation |
| --- | --- |
| 2003 | $2,000 |
| 2004 | $3,000 |
| 2005 | $4,000 |
| 2006 | $5,000" |

(8)     Section 7 of the Plan is amended by the addition of the following new paragraph at the end thereof:

2

"Notwithstanding any provision of this Plan or the Special Investment Supplement to the contrary, effective as of February 1, 2003: (i) the Plan will not distribute retirement benefit payments in the form of an annuity and the Plan will not distribute death benefits in the form of a survivor annuity; and (ii) spousal consent will not be required for distribution of vested Plan benefits, hardship and non-hardship withdrawals, or loans."

(9)     The provisions of this Amendment shall apply to management and salaried participants in the Plan, and shall not apply to any participant whose terms of employment are covered by a collective bargaining agreement for which retirement benefits have been the subject of good faith bargaining.

(10)    Supplement B of the Plan is deleted in its entirety and the new Supplement B attached to this Amendment is substituted in lieu thereof, effective as of January 1, 2003.

(11)    Supplement C of the Plan is deleted in its entirety and the new Supplement C attached to this Amendment is substituted in lieu thereof, effective as of January 1, 2003.


IN WITNESS WHEREOF, the Investment Plan Committee has caused this amendment to be executed by its members this 19th day of December, 2002.

As Investment Plan Committee Members
as Aforesaid

10421038v3

3

CH1 10421038.4

**SUPPLEMENT B**
**Participating Groups**

The employees set forth below are eligible to participate in the Plan:

| Participating Group | Plan Part |
|---|---|
| Joliet Guards IGUA 25 – Hourly Employees (014) | EIP 1 and 2 |
| Peoria Guards UPGUA 235 – Hourly Employees (OC2, 006, 016, 040, 047) | EIP 1 and 2 |
| Lafayette – Hourly Non-Bargaining Employees (088) | EIP 1 and 2 |
| Balderson – Management and Salaried Employees (OFY, OGB, OBP) | EIP 1 |
| Caterpillar Paving Products Inc. Employees (0R8) | EIP 1 |
| Anchor Coupling Employees (0FJ, 0FK) | EIP 1 |
| Solar - APP 685 and IUDE 82 Hourly Bargaining Employees and TurboFab Employees | EIP 1 |

**SUPPLEMENT C**
**Modified Benefits**

None as of January 1, 2003

## AMENDMENT
## OF
## EMPLOYEES' INVESTMENT PLAN

(As Amended and Restated Effective December 1, 1998)

WHEREAS, Caterpillar Inc. (the "Company") maintains the Employees'

Investment Plan (the "Plan"); and

WHEREAS, the Plan has previously been amended and further amendment

of the Plan now is considered desirable;

NOW, THEREFORE, by virtue of the power granted to the Investment Plan

Committee in Section 13 of the Plan, the Plan be and it hereby is amended in the

following particulars:

1. Effective December 1, 1985, by adding the following immediately after

the third sentence of paragraph 2.2(a) of the Plan:

> "In the case of a maternity or paternity absence (as defined below),
> an employee will not be deemed to have incurred a break in service
> for the twelve consecutive month period beginning on the first
> anniversary of the first date of such absence. A 'maternity or
> paternity absence' shall mean an employee's absence from work
> because of the pregnancy of the employee or birth of a child of the
> employee, the placement of a child with the employee in connection
> with the adoption of such child by the employee, or for purposes of
> caring for the child immediately following such birth or placement."

2. Effective December 1, 1985, by adding the following as paragraph

2.2(b)(vi):

"In the case of a maternity or paternity absence as defined in paragraph 2.2(a), to avoid incurring a break in service, an employee will be credited with up to 501 Hours Worked."

3. Effective December 1, 1987, by substituting the following for

paragraphs (a) and (b) of Section 4.4 of the Plan:

"(a)  employer contributions under the Plan or any other defined contribution plan of the employer; and

(b)  employee contributions under the Plan or any other defined contribution plan of the employer; and

(c)  remainders under the Plan or any other defined contribution plan of the employer."

4. Effective as of December 1, 2000, by substituting the following for the

last sentence of paragraph 6.3(f) of the Plan:

"Notwithstanding any other provisions of the Plan, with respect to the ESOP portion of the Plan, a participant who has attained age 55 and who has at least 10 years of ESOP participation ('qualified participant') may direct the trustee to transfer investments in Company Shares to one or more of the Investment Funds under Section 5.2 of the Special Investment Supplement without any restrictions in making such transfer, except as provided below. Such election may be made within 90 days after the close of each plan year in the qualified election period (i.e., the six year period beginning with the first plan year such participant became a qualified participant) and shall apply to the investment of 25 percent of the participant's Company Share account (50 percent with respect to the last election year that such participant could make such an election), but only to the extent such portion exceeds the amount to which a prior election has been made."

5. Effective as of January 1, 1987, by substituting the following for the

tenth sentence of paragraph 7.2(b) of the Plan:

-2-

"Any election may be revoked at any time by the participant during the 90 day period ending on the annuity starting date."

6. Effective January 1, 1993, by substituting the following for the first

sentence of paragraph 7.11(b) of the Plan:

> "A participant may elect to transfer an 'eligible rollover distribution' to an individual retirement account described in Section 408(a), an individual retirement annuity described in Section 408(b), a qualified trust or an annuity under Section 403(a). An eligible rollover distribution means any distribution to an employee of any portion of the balance to the credit of the employee but shall not include any distribution which is one of a series of substantially equal periodic payments (not less frequently than annually) made (i) for the life (or life expectancy) of the employee or joint lives (or joint life expectancies) of the employee and the employee's designated beneficiary, (ii) for a specified period of ten years or more, (iii) a minimum required distribution under Section 401(a)(9) of the Code, or (iv) any hardship distribution described in Section 401(k)(2)(B)(i)(IV) of the Code."

7. Effective March 22, 1999, by adding the following at the end of the first

sentence of Section 12.21 of the Plan:

> ", for distributions made after March 22, 1999."

8. Effective as of December 1, 1987, by substituting the following for

Section 17.4 of the Plan:

> "17.4 Compensation Limitation.
>
> [Deleted]"

9. Effective as of December 1, 1998, by substituting the following for the

first paragraph of subsection 2.1 of the Special Investment Supplement to the Plan:

-3-

"Participation under this Special Investment Supplement is optional on the part of eligible employees (as defined in subsection 2.1 of the Plan). To participate, an eligible employee must sign and file with the Investment Plan Committee an application furnished by such committee. Employees will be notified of the eligibility requirements as specified in the Plan through such general announcements as the committee shall authorize, but neither the employers, the committee, nor the trustee shall have any duty or obligation to notify any individual of any date as of which he is eligible to become a participant in this Supplement. The committee shall also establish rules with respect to applications and compensation reduction amounts that may be elected within the limitation described in this subsection. Each application shall authorize the employers to reduce the employee's compensation (excluding Incentive and Gainsharing pay) during his period of participation under this Supplement. An eligible employee may elect to cease compensation reduction contributions or to change the rate or the amount of his compensation reduction within the limitations of this subsection in accordance with subsection 2.2 of this Supplement. For each calendar year, the committee or its delegate may establish maximum compensation reduction amounts (that may be expressed as a dollar amount, a percentage or both) for any highly compensated employees whose compensation reduction contribution may be limited pursuant to subsection 2.4 of the Plan."

10.     Effective as of December 1, 1998, by substituting the following for subsection 2.2 of the Special Investment Supplement to the Plan:

"2.2. Filing of Participation Elections. An eligible employee may elect to become a participant under this Supplement as of his initial eligibility date by signing an application and filing it at such time and in such manner as the Investment Plan Committee may determine. If an employee does not so elect as of his initial eligibility date, he may elect to become a participant as of the first day of any subsequent month, if he then meets the requirements of subsection 2.1 of the Plan, by signing an application and filing it at such time and in such manner as such committee shall determine."

11.     Effective as of December 1, 2000, by adding the following as Supplement D to the Plan:

-4-

## "SUPPLEMENT D
### Special ESOP Provisions

D-1     Acquisition Loans. An installment obligation incurred by the
        Trustee in connection with the purchase of Company Stock shall
        constitute an Acquisition Loan. The Trustee may incur Acquisition
        Loans in accordance with the Trust and from time to time to finance
        (i) the acquisition of Company Stock by the Trust which are newly
        issued shares, outstanding shares held by the Company, or
        outstanding shares held by a shareholder, or (ii) the repayment of a
        prior Acquisition Loan. An Acquisition Loan shall be for a specific
        term, shall bear a reasonable rate of interest, and shall not be payable
        on demand except in the event of default. If the lender with respect
        to an Acquisition Loan is a Disqualified Person, the Acquisition
        Loan must provide that Trust assets will be transferred upon default
        only upon and to the extent of the failure of the Plan to meet the
        repayment schedule of the Acquisition Loan.

        (a)     Financed Shares. Shares of Company Stock acquired
                by the Trustee with the proceeds of an Acquisition
                Loan shall be described as "Financed Shares." Except
                as provided in section 409(l) of the Code or Treas.
                Reg. §54.4975-7(b)(9) and (10), or as otherwise
                provided by applicable law, no shares acquired by the
                Trustee with the proceeds of an Acquisition Loan may
                be subject to a put, call or other option or buy-sell or
                similar arrangement while held by and when
                distributed from the Plan.

        (b)     Collateral. An Acquisition Loan may be secured by a
                collateral pledge of the Financed Shares so acquired
                and any other Plan assets which are a permissible
                security within the provisions of Treas. Reg.
                §54.4975-7(b). No other assets of the Plan or Trust
                may be pledged as collateral for an Acquisition Loan,
                and no lender shall have recourse against any other
                Plan assets.

        (c)     Loan Payment. Repayment of principal and interest
                on any Acquisition Loan shall be made by the Trustee
                from annual employer contributions made pursuant to
                subsection 4.1 above and, as directed by the Benefits
                Fund Committee shall also be made from the
                following sources:

      (i)     Cash dividends on Financed Shares which are allocated to Participants' Accounts and earnings, if any, on such dividends; and

      (ii)    Cash dividends on Financed Shares held in the Loan Suspense Account and earnings, if any, thereon.

(d)    Release of Financed Shares. Financed Shares shall initially be credited to a "Loan Suspense Account" and shall be transferred for allocation to the ESOP Stock Accounts of Participants as payments of principal and interest are made on the Acquisition Loan by the Trustee, and any pledge of Financed Shares must, and shall be deemed to, provide for the release of shares so pledged on a consistent basis.

The number of Financed Shares to be released from the Loan Suspense Account for allocation to Participants' ESOP Stock Accounts as of each Accounting Date shall equal the number of Financed Shares held in the Loan Suspense Account immediately prior to such Accounting Date multiplied by a fraction, the numerator of which is equal to the payments of principal and interest on the Acquisition Loan for the year ending on such date, and the denominator of which is equal to the sum of the numerator plus the total projected payments of principal and interest on the Acquisition Loan over the duration of the Acquisition Loan repayment period.

(e)    Allocation of Financed Shares. The released Financed Shares shall be allocated to Participants' Accounts in accordance with the provisions of subsection 4.1.

D-2    Timing of Distributions. Notwithstanding anything in the Plan to the contrary, unless a participant elects a later date, distributions of all ESOP accounts will begin not later than one year after the end of the plan year

(a)    during which the participant retires or dies, or

-6-

      (b)    which is the fifth plan year following the plan year
              during which the Participant terminates employment
              for any other reason.

D-3   Method of Payment. Notwithstanding anything else in the Plan to
the contrary, all distributions to ESOP accounts will be in a lump
sum or over a period not longer than 5 years, in compliance with
Code Section 409(o)."

        IN WITNESS WHEREOF, the Investment Plan Committee has caused this
amendment to be executed by its members this 12th day of _____, 2002.

_____

_____

_____

_____

As Investment Plan Committee Members
as Aforesaid

CHI99 3882928-1.039437.0113

-7-

## AMENDMENT OF THE EMPLOYEES' INVESTMENT PLAN

WHEREAS, Caterpillar Inc. (the "Company") maintains the Employees' Investment Plan (the "Plan"); and

WHEREAS, the Plan has previously been amended and further amendment of the Plan is now desirable:

NOW, THEREFORE, by virtue of the power granted to the Investment Plan Committee by Section 13 of the Plan, the Plan be and it hereby is amended, effective as of December 1, 2000, as follows:

(1)    Section 1.1 of the Plan is amended by adding the following language at the end thereof:

"Effective as of December 1, 2000, the Plan has been amended to convert a portion of the Plan to a stock bonus plan as defined in Treasury Regulations section 1.401-1(b)(1)(iii) and a non-leveraged employee stock ownership plan ("ESOP") satisfying the requirements of sections 401(a), 409, and 4975(e) of the Code, and to make a number of additional conforming design and administrative changes to the Plan. The ESOP portion of the Plan is designed to be invested primarily in Company Shares, which are qualifying employer securities within the meaning of section 4975(e)(8) of the Code.

The ESOP portion of the Plan shall consist of all amounts credited to Participant Accounts, Employer Accounts, and other participant accounts established under Section 6 of the Plan, all amounts credited to the Caterpillar Common Stock Fund under section 5.2 of the Special Investment Supplement, and amounts in other investment funds under the Special Investment Supplement to the extent credited to participants' ESOP sub-accounts described in section 6.1 of such Supplement. The non-ESOP portion of the Plan shall consist of amounts credited to participants' non-ESOP sub-accounts described in section 6.1 of the Special Investment Supplement. Amounts credited to accounts in the ESOP portion of the Plan shall be referred to herein as amounts credited to participants' "ESOP accounts" or "ESOP sub-accounts" and amounts credited to accounts in the non-ESOP portion of the Plan shall be referred to as amounts credited to participants' "non-ESOP accounts" or "non-ESOP sub-accounts." "

The portion of this Plan which constitutes an ESOP, and which is mandatorily disaggregated from the balance of the Plan pursuant to Treasury Regulation Section 1.401(m)-1(b)(3)(ii), shall be tested

1

separately under the provisions of section 4.5 of the Plan and section 2.4 of the Special Investment Supplement.

(2)     Section 6.3(f) of the Plan is amended by adding the following new sentence at the end thereof:

"Notwithstanding any other provision of the Plan, a participant who has attained his fifty-fifth birthday and who has at least 10 years of participation may direct the trustee to make the transfer described in this paragraph 6.3(f) to the extent necessary to satisfy the requirements of section 401(a)(28) of the Internal Revenue Code of 1986."

(3)     Section 6.4 of the Plan shall be amended by redesignating paragraphs (c) and (d) as paragraphs (d) and (e), respectively, and by adding a new paragraph (c) to read as follows:

"(c)    Notwithstanding anything to the contrary in paragraph 6.4(b), a participant (or his beneficiary) shall be offered an election to receive a payment or distribution of cash dividends that are paid on or after December 1, 2000, on Company Shares held in his accounts, including cash dividends paid on Company Shares held by the Caterpillar Common Stock Fund described in section 5.2 of the Special Investment Supplement. The Investment Plan Committee may provide that this election may be offered:

(i)  before a dividend is paid, in which case the dividend may be paid by the Company directly to the participant (or beneficiary), or to the Plan pursuant to paragraph 6.4(b) and then distributed to the participant (or beneficiary) not later than ninety (90) days after the close of the plan year in which paid to the Plan, or

(ii) after the dividend has been paid, in which case the dividend paid to the Plan pursuant to paragraph 6.4(b) shall be distributed to the participant (or beneficiary) within ninety (90) days after the close of the plan year in which paid to the Plan.

Dividends that are not paid or distributed to a participant (or beneficiary) pursuant to the election described above shall remain subject to the requirements of paragraph 6.4(b). The Investment Plan Committee shall determine the scope, manner and timing of the elections, dividend payments or distributions, and reinvestment in Company Shares described in this paragraph (c) and paragraph 6.4(b) in any manner that is consistent with section 404(k) and

2

other applicable provisions of the Internal Revenue Code of 1986 and the Employee Retirement Income Security Act of 1974, as amended."

(4)     Section 7.2 of the Plan is amended by adding the following new paragraph (g) to the end thereof:

"(g)     In accordance with sections 409(h)(4), (5) and (6) of the Code, if the Company Shares are or become not readily tradable on an established market, then any participant who otherwise is entitled to a total distribution from the Plan shall have the right (hereinafter referred to as the "Put Option") to require that his Company Shares be repurchased by the Company. The Put Option shall only be exercisable during the sixty-day (60-day) period immediately following the date of distribution, and if the Put Option is not exercised within such sixty-day (60-day) period, it can be exercised for an additional sixty (60) days in the following plan year.

The amount paid for the Company Shares pursuant to the exercise of a Put Option as part of a total distribution shall be paid in substantially equal periodic payments (not less frequently than annually) over a period beginning not later than thirty (30) days after the request for total distribution is made and not exceeding five (5) years. There shall be adequate security provided and reasonable interest paid on an unpaid balance due under this paragraph.

If the Company is required to repurchase Company Shares as part of an installment distribution, the amount to be paid for the Company Shares will be paid not later than thirty (30) days after the exercise of the Put Option."

(5)     Section 6.1 of the Special Investment Supplement is amended by adding the following language at the end thereof:

"The Investment Plan Committee will maintain separate sub-accounts for each participant's account to reflect the value of the participant's interests in the ESOP portion of the plan and the non-ESOP portion of the plan. Two ESOP sub-accounts will be maintained for each participant's account which will reflect the value of any interests in the Caterpillar Common Stock Fund attributable to such account. One of these ESOP sub-accounts ("Current Year Contributions Stock Fund ESOP Sub-Account") will reflect the value of any interest in the Caterpillar

3

Common Stock Fund attributable to the participant's account to the extent attributable to employer basic contributions made during the plan year and intra-plan transfers from the then-current class pursuant to section 6.3(f) of the Plan. The other of these ESOP sub-accounts ("Prior Contributions Stock Fund ESOP Sub-Account") will reflect the value of any interest in the Caterpillar Common Stock Fund attributable to the participant's account to the extent such interest is attributable to employer basic contributions made in previous plan years, direct transfers from other plans, intra-plan transfers from other than the then-current class pursuant to section 6.3(f) of the Plan, and rollovers to the Plan.

Separate ESOP sub-accounts will reflect the value of any interest in other investment funds attributable to the participant's account to the extent such interest in the fund is attributable to employer basic contributions made during the plan year and intra-plan transfers from the then-current class pursuant to section 6.3(f) of the Plan. Separate non-ESOP sub-accounts will reflect the value of any interest in investment funds (other than the Caterpillar Common Stock Fund) attributable to the participant's account to the extent such interest is attributable to employer basic contributions made in previous plan years, direct transfers from other plans, intra-plan transfers from other than the then-current class pursuant to section 6.3(f) of the Plan, and rollovers to the Plan.

As of the first day of each plan year beginning after December 1, 2000, (i) all amounts credited to the Current Year Contributions Stock Fund ESOP Sub-Account as of the last day of the previous plan year will be automatically transferred to the participant's Prior Contributions Stock Fund ESOP Sub-Account, and (ii) all amounts credited to each of the other ESOP sub-accounts in a participant's account as of the last day of the previous plan year will be automatically transferred to the participant's non-ESOP sub-account that reflects an interest in the same investment fund. No transfers shall otherwise be permitted between (A) and (B), where (A) is any ESOP sub-account other than the Prior Contributions Stock Fund ESOP Sub-Account and (B) is the Prior Contributions Stock Fund ESOP Sub-Account or any non-ESOP sub-account."

(6)    Section 7.3 of the Special Investment Supplement is amended by adding the following language to the end thereof:

"Distributions of Company Shares shall be subject to the provisions of 7.2(g) of the Plan to the extent applicable."

4